**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIRLEEN RODRIGUEZ MERCADO** | **:** | **Civil No. 1:21-CV-365** |
| | **:** | |
| **Plaintiff** | **:** | **(Magistrate Judge Carlson)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **KILOLO KIJAKAZI,** | **:** | |
| **Acting Commissioner of Social Security[1],** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

## MEMORANDUM OPINION

### I.   Introduction

The plaintiff in this appeal, Shirleen Rodriguez Mercado, has, no doubt, faced adversity, trauma, and upheaval in her life. These challenges, including the death of her young son and father and a history of domestic abuse, have contributed to Mercado's various mental illnesses for which she has sought treatment and which, based on the medical record, are seemingly well controlled with medication. In addition to her mental health disorders and other physical ailments such as hypertension and scoliosis, Mercado suffers from fibromyalgia, a complex and often

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

mysterious condition that Mercado alleges causes her widespread pain despite often normal objective medical findings. Notwithstanding Mercado's struggles, after a review of Mercado's administrative record, and hearing her testimony and that of a vocational expert, the ALJ determined that she was not disabled under the law, providing a detailed and thorough summary of Mercado's record and giving thoughtful consideration to the medical opinions therein. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Given the deferential standard we are constrained to employ for social security appeals, it is not our province to reassess the evidence and provide our own view of Mercado's alleged disability. We must simply determine whether substantial evidence existed to support the ALJ's decision. Here, the ALJ has provided us with ample justification for his determination. Accordingly, the Commissioner's decision will be affirmed.

## II.   Statement of Facts and of the Case

On July 18, 2018, the plaintiff, Shirleen Rodriguez Mercado, filed the instant claim for disability and supplemental security insurance benefits, citing an array of physical and mental impairments, including depression, anxiety, bipolar, fibromyalgia, schizoaffective disorder, scoliosis, GERD, and rosacea. (Tr. 328).

2

According to the administrative record, this is the plaintiff's second Social Security disability application. Mercado's previous application was denied on July 28, 2017, her current amended onset date, and was denied on reconsideration. (Tr. 111-14). Mercado was forty-one years old at the time of the alleged onset of her disability, (Tr. 45, 324), and had never worked. (Tr. 328). She is a native of Puerto Rico and has limited ability to communicate in English. (Tr. 327, 641).

With respect to her alleged impairments, the clinical record, medical opinions, and the plaintiff's activities of daily living revealed the following:

Mercado suffers from both mental and physical impairments. As to her mental impairments, Mercado's records indicate she was being treated for depression, anxiety, schizoaffective disorder, and bipolar by Dr. Ailyn Diaz at Pennsylvania Psychiatric Institute (PPI). (Tr. 404). Overall, Dr. Diaz's records reveal that, although Mercado's conditions were well controlled with medication, (Tr. 551, 560, 921), she frequently had issues with noncompliance or partial compliance with her prescribed medication regimen. (Tr. 547, 554, 557, 568, 723, 726, 730). Although she reported episodes of mental health crises, these occurrences were primarily related to her medication noncompliance and, overall, her mental status evaluations were mostly normal and stable. (Tr. 549, 552, 556, 559, 563, 566, 569, 732).

The chronological record reveals that on September 7th, 2017, Dr. Diaz noted that Mercado reported feeling depressed and "not cheerful" with labile moods at times but denied any suicidal or homicidal thoughts. (Tr. 547). Dr. Diaz noted she had not been taking her medications. (Id.) Her mental status exam revealed calm, cooperative behavior, normal speech and thought content, with intact attention, concentration, and knowledge and fair judgment, although her mood was depressed and anxious. (Tr. 549). In November 2017, Dr. Diaz's mental status findings were again normal, and Mercado reported that her mood continued to improve and that her medications were helping. (Tr. 551-52). Dr. Diaz again reported normal mental status findings in February and March 2018, (Tr. 556, 559), and noted that Mercado was responding well to medication management and therapy and that she reported decreased anxiety and improved mood. (Tr. 554, 557).

Mercado reported changes in her sleep and appetite and depressed mood at her June 2018 appointment but reported no suicidal thoughts and had mostly normal mental status findings except that she reported auditory hallucinations when she is off her medication. (Tr. 560). Dr. Diaz noted that, overall, Mercado was responding well to individual therapy and medication management. (Id.) In July 2018 Mercado reported she was dealing with her depression better and that her symptoms were improving but still reported depressed mood, loss of energy, and trouble

4

concentrating. (Tr. 564). Her mental status findings were unremarkable. (Tr. 566). In September 2018, Mercado complained of depression and decreased energy because of her fibromyalgia but had normal mental status findings and reported she was busy with her hobby of baking cakes. (Tr. 568). She also admitted to only partial compliance with her medications. (Id.)

At her next appointment in April 2019, Diaz reported that Mercado indicated her biggest concern was her fibromyalgia pain which prevented her from doing things she wanted to do, like cooking, triggered her depression and anxiety, and affected her energy and concentration. (Tr. 722-23). She indicated that she had been unable to get her psychotropic medications for three months due to a problem with the pharmacy and was experiencing visual and auditory hallucinations. (Tr. 723). Diaz noted the decomposition of these symptoms was likely due to Mercado's nonadherence to medication for three months and discussed the possibility of inpatient psychiatric hospitalization. (Id.) Mercado declined inpatient hospitalization and did not meet the criteria for involuntary psychiatric hospitalization. (Id.)

At her follow-up in June 2019, she again reported nonadherence issues with her medications and described an episode at her son's birthday when she experienced homicidal thoughts against her son, dysphoric mood, and visual and auditory hallucinations with flight of ideas and rapid speech. (Tr. 726). Dr. Diaz

5

recommended switching to an injectable Abilify given ongoing issues with visual and auditory hallucinations and Mercado's nonadherence to her medication regimen. (Id.) However, at her next follow-up in July of 2019, Mercado reported that she had visited Puerto Rico and was unable to obtain her Abilify injection during her trip. (Tr. 730). She reported feeling depressed, anxious, and tearful during her trip, in part after visiting her deceased son's grave, (id.), but her mental status findings were mostly normal. (Tr. 732). At the referral of Dr. Diaz, Mercado also was admitted to a partial hospitalization program at PPI in January 2020. (Tr. 921). The medical record reflects that she struggled with inconsistent attendance at the program but showed gradual improvement in terms of depression and only mild psychotic symptoms. (Tr. 937).

Mercado also attended outpatient counseling with Linda Timme, LCSW. The medical record includes notes from Timme on August 15, 2019, indicating that Mercado had attended two counseling sessions and had another scheduled for later that month. (Tr. 639). According to Timme, Mercado had cancelled two prior appointments, but she had responded well to support and encouragement and had been active in her care and had been open about her past traumas including the death of her father and son and a history of domestic violence. (Id.) Progress notes from her first appointment on June 12, 2019 indicated she evidenced a sad and anxious

mood with increased anxiety due to domestic violence by her son's father. (Tr. 641).

Timme noted Mercado denied suicidal thoughts, plan, or intent and responded well

to a supportive approach with no anxiety, agitation, or restlessness noted, (id.),

although her mental status examination revealed agitated motor activity, poor insight

and judgment, inappropriate affect, and angry mood and indicated she was

experiencing visual hallucinations. (Tr. 643).

As to her physical ailments, although Mercado consistently reported diffuse

pain and tenderness throughout her body due to her fibromyalgia, her physical

examinations were frequently normal as to her motor skills and mobility, (Tr. 522,

739, 752, 759, 786, 794), and her rheumatologist indicated her pain may have been

worsened by her uncontrolled depression. (Tr. 759). Further, although she reported

stomach pain due to GERD, she underwent extensive testing which revealed no

major condition that would cause the ongoing pain she reported. (Tr. 759, 809, 895,

902).

Mercado received treatment for her fibromyalgia with Dr. Sowmya

Surapaneni at Hershey Medical rheumatology. At her initial appointment on

November 20th, 2017, Dr. Surapaneni noted Mercado reported ongoing diffuse pain

all over her body, particularly in her muscles and joints, for the prior three years

along with stiffness in the morning, bilateral foot pain, dry eyes, and fatigue. (Tr.

492). Mercado reported that she had tried a few different medications that had not helped her. (Id.) After examination, Dr. Surapaneni saw not much evidence of inflammation but confirmed that Mercado seemed to have diffuse tenderness all over her body with some generalized decreased strength. (Tr. 493). He recommended physical and aqua therapy including yoga or Tai Chi and recommended starting her on Lyrica after tapering down her gabapentin. (Id.)

Mercado was also referred to a pain management clinic and was evaluated by CRNP Virginia Thompson in May 2018. (Tr. 738). Mercado reported pain at 9/10 and reported constant aching tightness and pressure. (Id.) She denied hyperesthesia or motor deficit but noted she intermittently experienced numbness in her left leg. (Id.) Mercado also noted that her pain is worse after walking far and any of her daily activities and that she found nothing to be helpful. (Id.) Her examination revealed diffuse pain and significant tenderness with palpation of typical fibromyalgia tender points, guarded range of motion in her neck and spine but 5/5 strength in all upper and lower extremities with no gross sensory deficits. (Tr. 739). Thompson noted that Mercado was not a candidate for interventional therapy and recommended she follow-up with her prescribing providers regarding her medication regimen and try using topical medications for local relief. (Tr. 740).

Mercado again saw Dr. Surapaneni in June 2018 and October 2018. She was still reporting diffuse pain at both appointments and Dr. Surapaneni discussed switching her medications, as she indicated the medications she was taking were not helpful, although Dr. Surapaneni noted that she had not filled a prescription for one medication she previously sent to the pharmacy. (Tr. 752) Mercado began taking Lyrica which she noted helped with her pain. (Tr. 758). Dr. Surapaneni continued to emphasize the importance of exercise and having her depression better under control as that could be amplifying the pain. (Tr. 759). Follow-up radiographs of Mercado's cervical spine, left shoulder, and both hands were deemed normal, and her EMG was normal with no evidence of polyneuropathy, radiculopathy, or myopathy. (Tr. 766). Dr. Surapaneni discussed the results with Mercado on February 4, 2019, calling them "encouraging" and again recommended she try physical/aquatherapy. (Tr. 786). In June 2019, Mercado reported to Dr. Surapaneni that she was still having diffuse musculoskeletal pain, but she indicated that she was able to do her ADLs with some restriction. (Tr. 793).

Mercado also had issues with stomach pain. She was diagnosed with diverticulitis in December 2018 and later reported to the emergency room on June 4, 2019 with symptoms and was put on antibiotics. (Tr. 793, 913). She visited Dr. Stern, a gastroenterologist, in July of 2019, indicating she began experiencing

persistent abdominal pain and had tried numerous medications and had numerous evaluations since. (Tr. 807). Dr. Stern examined Mercado, reviewed her records and concluded that she had a very thorough workup with only the finding of a few aphthous ulcers in the ileum and had no "red flag symptoms" such as blood in stool, weight changes, signs of malnutrition, or p.o. intolerance. (Tr. 809). He opined that her examinations revealed a functional disorder and referred her to acupuncture and encouraged her to pick up a TENS unit and Salonpas topical patch. (Id.) He also encouraged her to discontinue medications that were not working, indicating a degree of polypharmacy. (Id.) Mercado was referred to Jackson Seigelbaum for follow-up on her abdominal symptoms in February 2020. There, Dr. Banerjee indicated that an extensive evaluation had been done, including CT, SBFT, and colonoscopy which all returned normal findings with the exceptions of a few small ulcers. (Tr. 895). He noted that her symptoms were "clearly out of proportion" for what would be expected given the evaluation and opined that it could be NSAID induced. (Id.) He recommended avoiding NSAIDS and referral to pain management. (Id.)

In addition to the records of Mercado's treating physicians, the record also includes RFC evaluations by six medical experts. Consultative mental status evaluations were performed by Dr. Kathleen Lederman, Psy.D. and state agency

10

psychological consultant, Douglas Schiller, Ph.D., and an assessment was also submitted by Mercado's treating psychiatrist, Dr. Diaz. Consultative evaluations of Mercado's physical condition were performed by Dr. Kneifati, state agency medical consultant, Candelaria Legaspi, MD, and treating CRNP Margaret Gibbons.

Assessing her mental functional abilities, Dr. Lederman examined Mercado and reviewed her medical history. She noted mild attention and memory problems, with mild to no limitation in understanding and remembering simple instructions, mild limitation in carrying out simple instructions and making judgments on simple work-related decisions, moderate limitation in understanding, remembering, and carrying out complex instructions and marked limitation in making judgments on complex work-related decisions. (Tr. 578). Dr. Lederman opined that, due to some auditory hallucinations, Mercado had a mild to moderate limitation in her ability to interact appropriately with the public, but mild to no limitation in her ability to interact appropriately with supervisors and coworkers and no limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 579). She noted no other capabilities would be affected by Mercado's mental impairments.

State agency psychological consultant, Dr. Douglas Schiller, also evaluated Mercado's mental functional abilities. After reviewing Mercado's medical records,

Dr. Schiller opined that Mercado had a mild limitation in her ability to understand, remember, or apply information and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (Tr. 125). He noted Mercado had a moderate limitation in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others. (Tr. 130-31).

Mercado's treating psychiatrist, Dr. Diaz, had a different view of her mental functional abilities. Dr. Diaz noted marked or extreme limitations in all categories as to Mercado's ability to understand, remember, or apply information and determined her GAF score to be 35-40 within the last year. (Tr. 861-62). She also noted extreme limitations in Mercado's ability to interact with others, including her ability to state her own point of view, respond appropriately to requests, suggestions, criticisms, correction, and challenges, and her ability to keep social interactions free from excessive irritability, sensitivity, argumentativeness, or suspiciousness,

12

although she noted no limitation in her ability to initiate or sustain a conversation or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and only mild limitation in her ability to understand and respond to social cues. (Tr. 862). Dr. Diaz opined that Mercado suffered extreme limitations in her ability to sustain concentration, persistence, or pace, except she only had a mild limitation in her ability to initiate and perform a task that she understands and knows how to do and her ability to work at an appropriate and consistent pace and only a moderate limitation in her ability to complete tasks in a timely manner. (Tr. 863). She also noted extreme or marked limitations in all areas of Mercado's ability to adapt or manage herself, except she noted no limitation in her ability to maintain personal hygiene and attire appropriate to work settings and only a mild limitation in her ability to be aware of normal hazards and take appropriate precautions. (Tr. 863-64). Dr. Diaz further opined that Mercado would be off task at least 15% of the time and would miss 8-10 days of work per month. (Tr. 864). Ultimately, she determined that Mercado could not work on a regular and sustained basis in light of her mental impairments. (Id.)

As to the medical opinion evidence of Mercado's physical status, Dr. Kneifati examined Mercado in October 2018 and opined that she could occasionally lift and carry up to twenty pounds, could sit for three hours at a time and four hours total,

could stand for two hours at a time and three hours total, and walk for one hour at a time and two hours total in an eight-hour workday. (Tr. 589). He opined that Mercado could frequently reach, handle, finger, feel, and push/pull with both hands and could frequently operate foot controls with both feet. (Id.) Further, Dr. Kneifati indicated that Mercado could occasionally climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and could frequently crawl. (Tr. 590). He noted that Mercado could occasionally tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and extreme heat, and could continuously tolerate dust, odors, fumes, vibrations, and very loud noise, (Tr. 591), and that she had no ambulatory limitations. (Tr. 592).

CRNP Gibbons also assessed Mercado's functional abilities on August 28, 2019, opining that Mercado's symptoms would occasionally be severe enough to interfere with her attention and concentration and that she was capable of low stress jobs. (Tr. 855). Gibbons further noted that Mercado could sit and stand for thirty minutes at one time but could sit and stand for less than two hours total in an eight-hour workday and that she would need to walk every sixty minutes for ten minutes at a time. (Tr. 855-56). According to Gibbons, Mercado would need a position that allowed her to shift positions at will from sitting, standing, or walking and would require two unscheduled fifteen-minute breaks in an eight-hour workday. (Tr. 856).

14

Gibbons opined that Mercado could occasionally lift less than ten pounds, but never

ten pounds or more, could occasionally look down, turn head right or left, look up,

hold head in static position, twist, stoop, crouch, and climb stairs but could never

climb ladders. (Tr. 857). Gibbons also noted that Mercado could reach, handle, or

finger for 10% of the workday with both hands, was likely to have good days and

bad days, and be absent from work about four days per month. (Tr. 857-58).

Mercado's impairments could be expected to affect her ability to concentrate, in

Gibbons' opinion, but not her ability to follow simple instructions or use her hands.

(Tr. 858). Gibbons determined that Mercado would be expected to miss work on a

regular basis one or more days per week and be off task 15% of an eight-hour

workday. (Tr. 859).

Conversely, Dr. Legaspi opined that Mercado could occasionally lift and/or

carry twenty pounds and could frequently lift and/or carry ten pounds, could stand

and/or walk for a total of about six hours in an eight-hour workday, and was

unlimited in her ability to push/push except as indicated by her ability to lift and

carry. (Tr. 127). She further noted that Mercado could frequently climb ramps/stairs,

balance, and stoop and could occasionally climb ladders/ropes/scaffolds, kneel,

crouch, and crawl. (Tr. 127-28). Dr. Legaspi noted that Mercado had no

manipulative, visual, or communicative limitations, and her only environmental

15

limitation was avoiding even moderate exposure to hazards such as machinery or heights. (Tr. 128).

It is against the backdrop of this evidence that the ALJ conducted a hearing in Mercado's case on March 27, 2020.[2] Mercado and a vocational expert both testified at this hearing. Mercado testified that her schizoaffective disorder, abdominal pain, and fibromyalgia prevented her from working and doing many daily activities around her home, such as cooking, cleaning, and taking out the garbage, and that she did not have any hobbies or visit friends. (Tr. 46-47). She testified that she had issues with her memory and concentration and had hallucinations, suicidal thoughts, homicidal thoughts, and depression, with symptoms exhibiting themselves weekly and medications only helping a little. (Tr. 48-49). According to Mercado, she was unable to handle stress and had trouble with instructions. (Tr. 87-88). She also testified that she could generally sit for half an hour to forty minutes before needing to get up and could walk less than one block before having to stop. (Tr. 89). At the hearing, the ALJ and Mercado's attorney also posed hypothetical questions to the vocational expert regarding whether there were any jobs in the national economy

---

[2] The first hearing in this case took place on December 17th, 2019 but had to be continued due to a scheduling conflict. (Tr. 90).

that could be performed by an individual with Mercado's residual function capacity and additional limitations.

Following the hearing on March 27, 2020, the ALJ issued a decision denying Mercado's application for benefits. (Tr. 19-32). In that decision, the ALJ first concluded that Mercado had not engaged in substantial gainful activity since June 26, 2018, the application date. (Tr. 21). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Mercado had the following severe impairments: fibromyalgia, scoliosis, hypertension, schizoaffective disorder, bipolar type, depression, anxiety, and post-traumatic stress disorder (PTSD). (Id.) The ALJ also determined that Mercado had several non-severe impairments, including a history of obesity, rosacea, and dry eye syndrome. (Id.) The ALJ found these impairments to be non-severe because there was no evidence of any associated limiting symptomology. (Id.) The ALJ also noted the claimant had a history of GERD and complaints of diffuse abdominal pain, which he determined were non-severe based on the medical record reflecting thorough diagnostic testing revealing no significant condition that could produce the plaintiff's alleged symptoms. (Tr. 22).

At Step 3, the ALJ determined that Mercado did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 22). The ALJ specifically considered Listings 12.03, 12.04, 12.06, and 12.15, and noted that, as to Mercado's physical limitations, her fibromyalgia, history of scoliosis, and hypertension did not meet any section of the listings and there was no evidence indicating that they had increased the severity of any of her coexisting or related impairments to the extent that the combination of these impairments met the requirements of a listing. (Id.) As to Mercado's mental impairments, the ALJ determined they did not cause at least two "marked" limitations or one "extreme" limitation to satisfy the "paragraph B" criteria. (Id.) The ALJ also noted that the "paragraph C" criteria was not satisfied as Mercado had not required an ongoing higher level of treatment or otherwise highly structured setting or experienced such a marginal adjustment that she was unable to adapt to changes that were not already a part of daily life. (Id.)

Between Steps 3 and 4 the ALJ concluded that Mercado retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps or stairs, but only occasionally climb ladders, ropes or scaffolds. She can frequently balance and stoop. The claimant can occasionally kneel, crouch or crawl. She can tolerate occasional exposure to unprotected heights and moving machinery with protective safety guards. The claimant can understand, remember, or carry out

detailed, but uninvolved written or oral instructions. She can deal with problems involving a few concrete variables on or from standardized situations. The claimant can make judgments on detailed, but uninvolved written or oral instructions. She can occasionally interact with the public, coworkers, and supervisors in a routine work setting.

(Tr. 23).

In reaching this RFC determination, the ALJ considered the medical evidence set forth above, the medical opinion evidence, and Mercado's statements regarding her limitations.

With respect to the medical opinion evidence regarding these alleged impairments, the ALJ considered the opinions of consultative examiners Dr. Lederman and Dr. Kneifati, state agency psychological consultant Dr. Schiller, state agency medical consultant Dr. Legaspi, and treating sources CRNP Margaret Gibbons and Dr. Diaz. As to Mercado's mental status findings, the ALJ found the opinions of Dr. Lederman and Dr. Schiller persuasive but found the opinion of Dr. Diaz not persuasive. The ALJ found Dr. Lederman's opinion persuasive, noting that, as a consultative examiner, Dr. Lederman performed an examination of Mercado prior to rendering her opinion, which she supported. (Tr. 28). The ALJ also found her opinion persuasive because she noted Mercado's reported auditory hallucinations but with only mild attention and memory difficulties, which the ALJ

found to be consistent with Mercado's treatment notes showing overall improvement and normal presentations when compliant with treatment. (Id.)

The ALJ also found the opinion of state agency psychological consultant, Dr. Douglas Schiller, persuasive because, although he acknowledged Mercado's history of psychiatric treatment, her medical examinations indicated intact ability to understand and follow routine, non-complex tasks. (Tr. 29). The ALJ also noted that Dr. Schiller's opinion was consistent with the treatment notes because, while the claimant received treatment in a partial hospitalization program for less than a month in January 2020, she had shown overall improvement when compliant with medications and treatment. (Id.)

Conversely, with regard to Mercado's mental status evaluations, the ALJ found the opinion of her treating psychiatrist, Dr. Diaz, not persuasive because it was not consistent with Mercado's mental status examination findings, including Dr. Diaz's own findings. (Tr. 30). Specifically, the ALJ noted that Mercado consistently presented with intact attention and concentration and overall normal recall and that the record indicated that Mercado had issues with medication compliance which was evidenced by Dr. Diaz's switch to an Abilify injection. (Id.) The ALJ also noted that, despite all the marked and extreme limitations prescribed by Dr. Diaz, she indicated that Mercado was able to manage her household funds adequately. (Id.)

As to the medical opinion evidence of Mercado's physical status, the ALJ found the opinion of Dr. Kneifati and CRNP Gibbons not persuasive but found Dr. Legaspi's opinion persuasive. The ALJ found Dr. Kneifati's opinion not persuasive because, despite these findings, Dr. Kneifati indicated that Mercado could only perform work within the sedentary exertional level. (Tr. 28). The ALJ noted that Dr. Kneifati's opinion was inconsistent with his own physical examination finding Mercado presented with normal gait, stable joints, normal reflexes, no sensory deficits, 5/5 strength throughout, no evident muscle atrophy, intact hand and finger dexterity, and 5/5 grip strength bilaterally. (Id.)

The ALJ also found the opinion of CRNP Margaret Gibbons not persuasive because Gibbons indicated that her treatment of Mercado had been limited to only three prior appointments and her support for her assessment was limited to Mercado's subjective reports of her pain level. (Tr. 29). The ALJ further noted that Gibbons noted "none" in response to identifying the clinical findings and objective signs and that her opinion was inconsistent with Mercado's physical examination findings of record as well as being internally inconsistent. (Id.) For example, the ALJ noted that, while it was indicated that Mercado was significantly limited in her ability to reach, handle, and finger, she also indicated that Mercado's ability to use her hands was not affected by her impairments. (Id.)

21

The ALJ did find state agency medical consultant, Dr. Legaspi's, opinion persuasive because she noted the claimant's history of fibromyalgia with diffuse widespread pain but with normal strength, no sensory deficits, and negative laboratory work-up. (Tr. 29). Further, Mercado's subsequent treatment notes of record showed overall stability with reported worsening symptoms secondary to going a couple of months without medication. (Id.)

The ALJ also considered Mercado's statements regarding her limitations but ultimately concluded that his statements were not entirely consistent with the medical evidence. (Tr. 24). The ALJ noted that Mercado testified to difficulty performing daily tasks, sitting, standing, and walking. (Id.) The ALJ also noted that Mercado testified to forgetfulness and problems paying attention with a history of auditory hallucinations telling her to harm herself or others and visual hallucination with seeing shadows. (Id.) The ALJ also indicated that Mercado alleged difficulty lifting, squatting, kneeling, climbing stairs, understanding, and getting along with others and that she does not handle stress or changes in her routine well. (Id.)

The ALJ found that Mercado's statements were not entirely consistent with the medical record. (Tr. 24). Specifically, the ALJ examined Mercado's psychiatry, rheumatology, pain management, and counseling appointment notes between November 2017 and January 2020, noting relatively unremarkable findings. (Tr. 22).

22

The ALJ noted Mercado's normal mental status exam findings including logical thought process, normal thought content, intact association, intact attention and concentration, and fair judgment at her psychiatry appointment with Dr. Diaz in September of 2017 and that Dr. Diaz consistently reported normal and stable mental status examination findings, despite Mercado sometimes presenting with a depressed affect. (Tr. 24). She further noted that Mercado's psychological symptoms related to her schizoaffective disorder related psychosis, including suicidal thoughts and thoughts of hurting others, and hallucinations, were often associated with Mercado's noncompliance or partial compliance with her medication, and that usually had a positive response to medication when she took it. (Tr. 25-27). The ALJ noted that in April of 2019 Mercado presented to Dr. Diaz with a depressed, tearful affect and anxious mood but with logical thought processes, normal thought content, intact recent memory, intact attention and concentration, and fair insight and judgment. (Tr. 26). The ALJ acknowledged Mercado's partial hospitalization at the referral of Dr. Diaz in January 2020 but noted that Mercado struggled with inconsistent attendance at the program but showed gradual improvement in terms of depression and only exhibited mild psychotic symptoms. (Tr. 27).

The ALJ also noted that, although Mercado consistently complained to providers about diffuse pain due to her fibromyalgia, her examinations consistently

showed unremarkable findings, her condition was treated with pain medication, and her doctors consistently emphasized the importance of physical activity, exercise, and controlling her depression to assist with her pain. (Tr. 25-27). The ALJ specifically noted that at Mercado's rheumatology appointment in November 2017, the doctor noted that Mercado presented with diffuse tenderness in her muscles due to her history of fibromyalgia, but without much evidence of inflammation, (Tr. 24), and that a pain management specialist determined Mercado was not a candidate for interventional therapy in May 2018 due to unremarkable examination findings. (Tr. 25). In June 2018, the ALJ noted that her rheumatologist again recommended physical/aquatic therapy and staying physically active in addition to a change in her pain medication. (Id.) In October 2018, Mercado's x-rays showed normal findings in her cervical spine, left shoulder, and her November 2018 EMG/NCS was normal with no evidence of polyneuropathy, radiculopathy, or myopathy. (Tr. 28).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Mercado had not engaged in any work activity that met the durational and earnings requirements to constitute past relevant work. (Tr. 30). Between Step 4 and 5, the ALJ concluded that Mercado was 41 years old, which is defined as a younger individual age 18-49 on the date the application was filed, and that Mercado had at

least a high school education.[3] (Id.) Finally, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Mercado could perform, considering her age, education, work experience, and residual function capacity, including housekeeping cleaner, merchandise marker, and laundry worker. (Tr. 31). Having reached these conclusions, the ALJ determined that Mercado had not met the demanding showing necessary to sustain his claim for benefits and denied her claim.

This appeal followed. (Doc. 1). On appeal, Mercado challenges the adequacy of the ALJ's decision arguing that the ALJ erred and abused his discretion by failing to find Mercado's GERD/diffuse abdominal pain as a severe impairment. She also argues that the RFC adopted by the ALJ was not supported by substantial evidence,

---

[3] The ALJ also noted at this step that Mercado is able to communicate in English. Upon review of the administrative record, we noted this was an error as the record clearly demonstrates that she is not able to communicate in English. The parties having not addressed this error, we requested the parties submit supplemental briefs explaining their respective positions. (Doc. 22). The Commissioner asserted that Mercado's ability to communicate in English is not outcome-determinative in this case because, under the Commissioner's Medical-Vocational Guideline Rules, a finding of "not disabled" is directed for an individual with her vocational characteristics regardless of her ability to communicate in English. (Doc. 23). The plaintiff conceded that her ability to communicate in English is not outcome-determinative and thus constitutes harmless error on the part of the ALJ. (Doc. 24). Accordingly, we simply note this error, but find it harmless as to the outcome of this case.

did not include a function-by-function analysis as required by the social security regulations, and failed to adequately capture and recite all of the plaintiff's limitations. Finally, Mercado argues that the ALJ's persuasiveness findings regarding the medical opinions were not supported by substantial evidence. (Doc. 19, at 3-4).

As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, under the highly deferential standard of review which we are required to apply we conclude that the ALJ's decision should be AFFIRMED.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.**      **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and

recommendation adopted sub nom. <u>Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller v. Acting Comm'r of Soc. Sec.</u>, 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4,

32

2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

33

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir.
1999).

**C.**   **Step 2 Analysis**

At step-two of the sequential analysis, the ALJ determines whether a claimant
has a medically severe impairment or combination of impairments. Bowen v.
Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An
impairment is considered severe if it "significantly limits an individual's physical or
mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment
is severe if it is "something beyond 'a slight abnormality which would have no more
than a minimal effect on an individual's ability to work.'" McCrea v. Comm'r of
Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856
(1985)). The Court of Appeals is clear that the step-two inquiry is
a de minimis screening device used to cast out meritless claims. McCrea, 370 F.3d
at 360; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The burden
is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S.
at 146, 107 S.Ct. 2287. Stancavage v. Saul, 469 F.Supp.3d 311, 331 (M.D. Pa. 2020).

### D. **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare,* 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc.

> Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a
> claimant's subjective testimony that is not found credible so long as
> there is an explanation for the rejection of the testimony. Social
> Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social
> Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that
> there is an underlying medically determinable physical or mental
> impairment that could reasonably be expected to produce the
> individual's pain or other symptoms, however, the severity of which is
> not substantiated by objective medical evidence, the ALJ must make a
> finding on the credibility of the individual's statements based on a
> consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective

reports of pain under a standard of review which is deferential with respect to the

ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ

so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social

Security Rulings and Regulations provide a framework under which the severity of

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529,

416.929; SSR 16–3p. It is important to note that though the "statements of the

individual concerning his or her symptoms must be carefully considered, the ALJ is

not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363

(3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or

other symptoms will not alone establish that you are disabled"). It is well settled in

the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security

Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9

(M.D. Pa. Sept. 30, 2015); <u>George v. Colvin</u>, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### E.    <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in May of 2019 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u> ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), <u>see</u> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the

42

different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings</u>, 129 F.Supp.3d at 214–15.

### F.   <u>This Case Will Be Affirmed.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Mercado was not entirely disabled.

The plaintiff essentially raises three arguments in support of her claim that the ALJ's determination that she was not disabled was made in error. She first asserts

that the ALJ erred and abused his discretion by failing to find Mercado's GERD/diffuse abdominal pain as a severe impairment at Step 2 of his sequential analysis. However, there was substantial evidence supporting the ALJ's decision that Mercado's GERD and diffuse abdominal pain was a non-severe impairment. Further, the ALJ provided a detailed explanation for his decision, citing support from the medical record:

> The claimant also has a history of GERD and complaints of diffuse abdominal pain. On September 29, 2017, Subhra Banerjee, MD, with Jackson Siegelbaum gastroenterology noted the claimant's recent EGD was unremarkable except for minimal peptic duodenitis and advised that her complaints of abdominal discomfort may be "psychosomatic in nature" (Exhibit B9F). On February 27, 2019, it was recommended that the claimant continue with bentyl, Carafate, and omeprazole for her reported abdominal pain in addition to making better diet choices (Exhibit B14F). On June 18, 2019, Dr. Banerjee noted the claimant's chronic abdominal pain complaints are "clearly out of proportion" with the findings of her "extensive" prior work-up with the only abnormality identified being mild ileal ulceration per capsule study. It was recommended that she avoid NSAID usage (Exhibit B17F). Thus, medical evidence of record supports a finding that these impairments have not caused more than minimal limitation in the ability to perform basic work activities for 12 consecutive months.

(Tr. 21-22). According to the ALJ, Mercado's medical record reflected that her abdominal pain was not caused by any significant medical abnormality and thus was not a severe impairment. Where an ALJ has clearly articulated the evidence supporting his decision, it is not our province to substitute our own judgment as to the severity of the plaintiff's impairments. Nonetheless, a review of the record

demonstrates that the plaintiff failed to meet her burden of showing that her abdominal pain was "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" McCrea at 360. Further, in support of her argument, the plaintiff references her medical records showing complaints of abdominal pain but has not articulated the evidence supporting her assertion that her abdominal pain would have more than a minimal effect on her ability to work. Therefore, the ALJ's finding that Mercado's GERD/abdominal pain was non-severe was supported by substantial evidence.

Moreover, even if the ALJ erred in finding Mercado's GERD to be non-severe, the error would be harmless. It is well settled that the Step 2 analysis is primarily one used for screening. As previously noted, the Court of Appeals is clear that the Step 2 inquiry is a de minimis screening device used to cast out meritless claims. McCrea, 370 F.3d at 360; Newell., 347 F.3d at 546, and the burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146, Stancavage, 469 F.Supp.3d at 331. On this score, although if a claimant has *no* impairment or combination of impairments which significantly limits her physical or mental abilities to perform basic work activities, the claimant will be found "not disabled" and the evaluation process ends at step two, McCrea at 360 (emphasis

45

added), if the claimant has *any* medically determinable impairment that is severe, the evaluation process continues. Id. Furthermore:

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D.Pa. Oct.28, 2009); see also Salles v. Comm. of Soc. Sec., 229 F.Appx. 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir.2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless").

Here, the ALJ, having found that Mercado suffered a number of severe impairments in addition to several non-severe impairments, continued his analysis past the screening in Step 2. It also appears that the ALJ considered Mercado's holistic medical record, including both severe and non-severe impairments, when fashioning Mercado's RFC. Thus, even if the ALJ erred in his characterization of the plaintiff's abdominal pain as non-severe, this characterization did not affect his ultimate finding and would constitute harmless error.

The plaintiff also argues that the ALJ's residual functional capacity assessment of Mercado is not supported by substantial evidence and that the ALJ failed to consider and articulate all of Mercado's limitations when fashioning this RFC. The plaintiff's argument that the ALJ failed to consider limitations from her severe and nonsevere impairments is without merit. The ALJ considered all of the record evidence, which showed largely normal examination findings, both physical and mental, throughout the relevant period. While the plaintiff testified to more severe limitations, the ALJ found that her statements were not entirely consistent with her treatment records and these largely normal examination findings. The ALJ acknowledged the record indicated that Mercado had a history of scoliosis and hypertension but with no specific treatment with any specialists for these impairments since the alleged onset date. As to her fibromyalgia, the ALJ noted that, although the record indicated that her fibromyalgia caused her tenderness throughout her body, other than positive fibromyalgia tender point findings, her physical exam findings were overall normal. (Tr. 30). The ALJ also noted that x-rays performed showed normal findings in her cervical spine, left shoulder, and both hands and Mercado's November 6, 2018 EMG/NCS was normal with no evidence of polyneuropathy, radiculopathy, or myopathy. And, despite the plaintiff's argument that Mercado underwent medications and physical and aqua therapy, which were not

47

helpful, and that she had reached a "medical plateau" the ALJ noted that her increased pain in December 2019 was in the setting of Mercado not taking Lyrica for the last few months and that she had not followed up with Dr. Surapaneni's recommendation for physical/aqua therapy and the importance of staying physically active generally.

The ALJ also considered Mercado's mental impairments when fashioning her RFC, but noted that, while she has a history of mental health impairments with hallucinations and associated thoughts of harming herself or others, the record indicates that when she is complaint with her medication regimen she has an overall response with improved mood and reduced psychosis. (Id.) The ALJ further indicated  Mercado's noncompliance with her medication was evidenced by her being switched to an Abilify injection. (Id.) Therefore, the ALJ found that Mercado was not as limited as she had alleged, and moreover, that she was not entirely disabled. These findings were supported by substantial evidence; that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154. Accordingly, there are no grounds to set aside the ALJ's decision based upon this symptom evaluation.

Finally, the plaintiff argues that the ALJ's persuasiveness findings regarding the medical opinion evidence were not supported by substantial evidence. The

plaintiff asserts that the ALJ gave too much weight to the state medical agency consultant, Dr. Legaspi, when he formulated the physical RFC assessment and that her opinion was not supported by substantial evidence.

As previously noted, Mercado's disability claim was filed after a paradigm shift in the requirements for an ALJ's assessment of medical opinion testimony. Thus, while prior to 2017 treating sources were generally entitled to more weight when considering competing medical opinions, the new regulations adopted a more holistic approach to the analysis, requiring the ALJ to evaluate all medical opinions based on their persuasiveness and explain how he or she considered the supportability and consistency of the medical opinion. Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

The ALJ explained in great detail his analysis of the medical opinion evidence, including the elements of supportability and consistency. In explaining why he found Dr. Legaspi's opinion persuasive, the ALJ first noted that Dr. Legaspi reviewed Mercado's available treatment records prior to rendering her opinion, which she fully supported. (Tr. 29). The ALJ also explained that he found her opinion persuasive because it was consistent with Mercado's medical record showing claimant's history of fibromyalgia with diffuse widespread pain but with normal strength, no sensory deficits, and negative laboratory work-up and

49

Mercado's subsequent treatment notes of record showing overall stability with reported worsening symptoms secondary to going a couple of months without medication. (Id.)

Further, the ALJ explained why he found the opinions of CRNP Gibbons and Dr. Kneifati unpersuasive. As to Dr. Kneifati, the ALJ found that his opinion that Mercado could only perform work within the sedentary exertional level was inconsistent with his own physical examination finding a normal gait, stable joints, normal reflexes, no sensory deficits, 5/5 strength throughout, no evident muscle atrophy, intact hand and finger dexterity, and 5/5 grip strength bilaterally, despite his finding that Mercado had tenderness throughout the fibromyalgia tender points. (Tr. 28). He similarly found that CRNP Gibbons' opinion was not persuasive because it was inconsistent with the physical examination findings of record as well as her own examinations. Specifically, the ALJ noted that, while it was indicated that Mercado was significantly limited in her ability to reach, handle, and finger, she also indicated that her ability to use her hands was not affected by her impairments. (Id.) The ALJ also found that Gibbons' opinion was supported only by Mercado's subjective reports of her pain level and based upon only three prior appointments. (Id.)

In our view, the ALJ clearly evaluated all medical opinions for their persuasiveness and "explain[ed] how [he or she] considered the supportability and consistency factors" in making his determination. Andrew G. at *5. Thus, at bottom, it appears that Mercado is requesting that this Court re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). The ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting de novo might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

Accordingly, we will affirm the Commissioner's decision.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 20, 2022